1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT
9            FOR THE DISTRICT OF ARIZONA
10
11   Federico Aros,                          No. cv-09-320-TUC-JGZ (CRP)
                        Petitioner,          **REPORT AND**
12                                           **RECOMMENDATION**
13   v.
14   Charles L Ryan, et. al.,
15                        Respondents.
16
17          This matter is before the Court on Petitioner's Amended Petition for Writ of
18   Habeas Corpus pursuant to 28 U.S.C. §2254 ("Habeas Petition"). (Doc. 7). Petitioner
19   challenges his state court conviction, asserting multiple constitutional violations under
20   three broad claims. Respondents answered the Habeas Petition. (Doc. 14). Petitioner did
21   not file a reply. Pursuant to the Rules of Practice of this Court, this matter was referred to
22   Magistrate Judge Pyle for a Report and Recommendation. LR Civ 72.1. After considering
23   the briefing, exhibits and relevant law, the Magistrate Judge recommends the Habeas
24   Petition be denied.
25   **I.      FACTUAL AND PROCEDURAL HISTORY**
26   **A.      Petitioner's Criminal Trial**
27          A jury found Petitioner guilty of six separate counts for an incident in which
28   Petitioner sexually assaulted his sister-in-law and then fled from law enforcement the

following day. Petitioner was convicted of one count kidnapping and four counts sexual assault for entering his sister-in-law's house and forcing her to perform various sexual acts. (Doc. 14-1, Ex. A, pp. 3-4; Doc. 14-2, Ex. E, pp. 25-30).[1] Petitioner was convicted of one count felony fleeing from law enforcement for leading police in a high-speed car chase the day after he attacked his sister-in-law. (*Id.*).

Twice during trial, the victim gave "impact testimony" that the trial judge had previously excluded. (Doc. 14-1, Ex. B, p. 21; Doc. 14-3, Ex. J, pp. 49, 72). On the stand the victim testified that Petitioner was "the biggest loser she'd ever met" and she knew he was capable of hurting her; later she testified that she had seen a counselor after the sexual assault. (Doc. 14-1, Ex. A, p. 4). The trial judge sustained all of defense counsel's objections to this testimony, advised the jury to disregard it, and before jury deliberation, provided a limiting instruction to the jury. (Doc. 14-3, Ex. J, pp. 49-51, 73). Based on these prejudicial statements made by the victim, the defense attorney twice moved for a mistrial. (Doc. 14-3, Ex. J, pp. 49-51; Doc. 14-4, Ex. J, p. 11). The trial court denied the motions, noting that the jury was instructed to disregard the testimony if an objection was sustained and that the judge would give a limiting instruction to disregard any information regarding Petitioner's prior history. (Doc. 14-3, Ex. J, pp. 49-51; Doc. 14-4, Ex. J, p. 13).

Later in trial, a police detective testifying for the prosecution, testified that Petitioner was unwilling to provide a sample of DNA during the investigation. (Doc. 14-5, Ex. J, p. 19). The defense attorney objected to the detective's testimony, arguing Petitioner had no obligation to give a DNA sample, and the Government's presentation of this testimony to the jury was unduly prejudicial. (*Id.* at 19-20). During the bench conference, defense attorney again asked for a mistrial. (*Id.* at 21). The court denied the motion for a mistrial and stated the jury would be instructed Petitioner had no obligation to provide a DNA sample, and the jury should not infer anything from Petitioner's

---

[1] The Magistrate Judge cites to the pagination of the Court's CM/ECF case management system.

refusal. (*Id*. at 21).

At the conclusion of the testimony, the defense attorney moved for acquittal as to count two, digital penetration, and count five, fellatio. (Doc. 14-2, Ex. E, pp. 57-59). Defense counsel argued there was insufficient evidence of digital penetration and there was insufficient evidence that the oral-penile contact was not a consensual sex. (*Id*. at 58-61). Defense counsel argued the victim agreed on cross-examination that she suggested oral-penile contact. (*Id*. at 58-59). In fact, defense counsel was confused on the testimony; the victim testified that she may have suggested oral-vaginal contact but only because the non-consensual penile-vaginal sex was making her sore and she wanted it to stop. (Doc. 14-3, Ex. J, p. 82). The court denied both motions, finding sufficient evidence of the acts to go to the jury. (Doc. 14-2, Ex. E, pp. 60-61).

On July 18, 2005, the jury found Petitioner guilty of all six counts. (Doc. 14-2, Ex. E, pp. 25-30). On August 15, 2005, the trial court sentenced Petitioner. During sentencing, the trial judge informed counsel and Petitioner that he interpreted Arizona's criminal statute on sexual assault as requiring him to sentence Petitioner to consecutive terms for the four sexual assault convictions. (Doc. 14-1, Ex. B, pp. 23-24). The trial court found Petitioner had two prior felony convictions, and sentenced Petitioner to slightly mitigated fourteen-year terms for the four sexual assault charges to be served consecutively to one another, and prison terms of fourteen years for kidnapping and three years for fleeing from law enforcement, to be served concurrently; Petitioner was sentenced to 56 years in total. (Doc. 14-1, Ex. A, p. 3).

**B.    Petitioner's Direct Appeal**

Petitioner filed a timely appeal to the Arizona Court of Appeals on January 13, 2006. (Doc. 14-1, Ex. B, p.13). In his appeal, Petitioner alleged the trial court erred in denying Petitioner's motions for mistrial based upon the introduction of prejudicial other acts testimony by the victim and prejudicial testimony by the detective who testified that Petitioner refused to provide a DNA sample. (*Id*. at 24). In arguing the trial judge should have granted the motions for mistrial, Petitioner focused on Arizona evidentiary law,

specifically Rules 403 and 404 of the Arizona Rules of Evidence. (*Id*. at 24-26). Petitioner also alleged the trial court erred in interpreting Arizona law to require consecutive sentences on Petitioner's four sexual assault convictions, and Petitioner's sentences, imposed to run consecutively, violated Petitioner's Eighth Amendment right to be free from cruel and unusual punishment. *Id*. Petitioner argued that if the Arizona statute, A.R.S. § 13-1406, was construed as the trial court found, to require consecutive sentences, then the statute "constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Art. 2, § 15 of the Arizona Constitution." (*Id*. at 28-29, 31-32).

On June 22, 2006, the Court of Appeals affirmed the verdict and sentences. (Doc. 14-1, Ex. A, p.1). The Court of Appeals applied Arizona evidentiary law to determine the trial court did not err in refusing to grant a mistrial. (*Id*. at 5-6). The Court of Appeals noted the trial court sustained each of Petitioner's objections to the victim's impact statements and the detective's testimony about Petitioner's refusal to provide a DNA sample and the trial court also provided limiting instructions to the jury. (*Id*. at 4-5). The appellate court further held that each of the inadmissible statements did not have any significant prejudicial effect on the jury because the state introduced, without objection, ample other evidence of Petitioner's other acts, as well as Petitioner's undisputed attempts to elude law enforcement. (*Id*. at 6).

The Court of Appeals also found A.R.S. § 13-1406 was not ambiguous and the trial court did not err in determining the statute required the sentences for Petitioner's sexual assault convictions to run consecutively. (*Id*. at 8-9). The appellate court further held the imposition of mandatory consecutive sentences for sexual assaults arising from a series of acts committed during a single incident did not violate prohibitions against cruel and unusual punishment under the Eighth Amendment of the United States Constitution. (*Id*. at 10). The Court resolved the issue, finding the "Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence." (*Id*. at 11) (quoting *United States v. Aiello*, 864 F.2d 257, 265 (2nd Cir.1988)).

- 4 -

The Court noted Petitioner did not argue that a fourteen-year term is grossly disproportionate to the crime of sexual assault and consecutive sentences cannot be a basis of a disproportionality argument. (*Id*. at 11). The Court found Petitioner's sentence was not "grossly disproportionate to the crime he committed." (*Id*. at 10). Thus, the verdict and sentences were affirmed. (*Id*. at 12).

Petitioner filed a timely petition for review to the Arizona Supreme Court. The Arizona Supreme Court denied review on April 12, 2007. (Doc. 14-1, Ex. C, p. 35).

## C.    Petitioner's Collateral Appeal

On September 24, 2007, Petitioner filed a timely Petition for Post-Conviction Relief ("PCR Appeal") with the trial court. (Doc. 14-2, Ex. E, p.1). In his PCR Appeal, Petitioner alleged ineffective assistance of trial counsel in violation of the Sixth Amendment of the United States Constitution. (Doc. 14-2, Ex. E, pp. 10-18). Petitioner argued his trial counsel was ineffective for three reasons.

First, he alleged that in seeking acquittal for two of the sexual assault counts, defense counsel inaccurately recalled the evidence and confused which of the sexual acts may have been consented to by the victim. (*Id*. at 10-11). The victim testified that she may have suggested oral-vaginal contact. (*Id*.). Trial counsel mistakenly argued the victim testified that she suggested oral-penile contact. (*Id*.). In his PCR Appeal, Petitioner argued if his attorney had not confused the testimony, he could have won acquittal on the sexual assault charge for oral-vaginal contact since it was the victim who suggested it. (*Id*.). Petitioner further argued he could have also succeeded on acquittal for the charge of digital penetration as he would not have done that act if the victim had not suggested oral-vaginal contact. (*Id*.).

Second, Petitioner alleged trial counsel erred in failing to re-urge the motion to sever the unlawful flight from law enforcement charge at the conclusion of the state's case. (*Id*. at 12). Petitioner argued the motion should have been re-urged because the charge was unrelated to the accusation of sexual assault and highly prejudicial. (*Id*. at 12-13). In his third and final ineffective assistance of counsel claim, Petitioner alleged his

trial counsel erred in failing to request a curative jury instruction as to lack of connection between the unlawful flight charge and the other charges against Petitioner. (*Id*. at 13-14).

On February 7, 2008, the trial court denied the PCR Appeal. (Doc. 14-2, Ex. F, p. 66). Applying *Strickland*, the trial court found Petitioner did not suffer prejudice on any of the three alleged trial counsel errors. *Strickland v. Washington*, 466 U.S. 668 (1984); (*Id*. at 67). The trial court noted defense counsel did confuse which act of oral sex the victim testified suggesting to Petitioner. (*Id*. at 68). The court, however, found it would have denied Petitioner's motion for acquittal based on a consent theory for any of the sexual assault charges. (*Id*.). The trial court found the victim testified that she suggested oral sex in an effort to stop the non-consensual penile-vaginal sex that was making her sore and that the victim made it clear that she did not voluntarily agree to any sexual activity with Petitioner and that she feared for her safety. (*Id*. at 68). The trial court, therefore found, Petitioner suffered no prejudice from defense counsel's confusion about the victim's testimony. (*Id*. at 69).

As to the second claim, failure to re-urge a motion to sever the felony flight charge, the court found defense counsel did not err and Petitioner was not prejudiced by defense counsel's decision not re-urge the motion, as there is no requirement to re-urge a motion previously preserved and Petitioner's flight from law enforcement the day after the sexual assault was probative and thus, joinder was not prejudicial. (*Id*. at 69).

Analyzing the third claim, the court found trial counsel did not err in failing to seek a curative instruction and Petitioner was not prejudiced by defense counsel's failure to seek a curative instruction on the allegation that Petitioner fled from law enforcement because the allegation was relevant to the sexual assault charges, and therefore curative, limiting instructions would not have been given. (*Id*. at 70). Having found Petitioner received "highly competent representation from an experienced trial attorney" the trial court denied the PCR Appeal. (*Id*. at 70).

On May 5, 2008, Petitioner filed a petition for review of his PCR Appeal with the Arizona Court of Appeals. (Doc. 14-2, Ex. G, p. 71). In his petition for review, Petitioner

argued that the trial court erred in failing to find trial counsel ineffective for: (1) trial counsel's error in confusing the victim's testimony about the type of oral sex she suggested; and (2) trial counsel's failure to request a curative instruction as to the connection between the unlawful flight charge and the other charges, causing prejudicial impact to Petitioner. (*Id*. at 74, 78, 82).

On December 10, 2008, the Court of Appeals granted review, but denied relief. (Doc. 14-2, Ex. H, p. 93). The Court of Appeals cited the trial court's reasons for denying relief, and noted that Petitioner merely repeated the allegations of his PCR Appeal, "without explaining why or how the trial court abused its discretion in denying relief." (*Id*. at 97). Petitioner then filed a petition for review to the Arizona Supreme Court. The Arizona Supreme Court denied review on May 7, 2009. (Doc. 14-2, Ex. I, p. 98)

**D.    Petitioner's Federal Habeas Corpus Petition**

Petitioner filed a timely Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 5, 2009. (Doc. 1). [2] On August 27, 2009, that Habeas Petition was dismissed without prejudice, with leave to amend within thirty days. Petitioner then timely filed an Amended Habeas Petition on September 28, 2009. (Doc. 7).[3] In his Amended Habeas Petition, Petitioner asserts multiple constitutional violations under three broad claims.

The claims include: (1) the trial court violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights by denying Petitioner's motions for mistrial based on prejudicial testimony elicited from the victim and a detective; (2) the trial court misinterpreted state sentencing law and violated Petitioner's Eighth and Fourteenth

---

[2] Respondents state the Habeas Petition appears to be timely. (Doc. 14, p. 3). Because the Habeas Petition appears to be timely and the Court is not required to raise the statute of limitations *sua sponte*, the Magistrate Judge will not further address the timeliness of the Habeas Petition. *See Day v. McDonough*, 547 U.S. 198, 209 (2006).

[3] An amended habeas petition relates back to the date of filing of the original petition. *See* Fed.R.Civ.P. 15(c). The relevant date for determining whether the petitioner timely filed a petition is the original petition filing date. *See Mayle v. Felix*, 545 U.S. 644, 656-664 (2005) ("So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.").

Amendment rights by running his sentences consecutively, not dismissing two counts of sexual assault based on the victim's alleged consent, and not informing Petitioner of his rights when Petitioner told the court he wanted to plead guilty to the felony flight charge; and (3) Petitioner's trial counsel provided ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights for a number of reasons including failing to make certain objections at trial, failing to ask for jury instruction on unlawful flight charge, failing to advise Petitioner of rights given up in pleading guilty, confusing the victim's testimony about suggesting an act of oral sex when arguing for a Rule 20 acquittal, failing to request a jury instruction on the flight charge, and generally failing to adequately prepare for trial. (*Id*. at 6-13).

Respondents contest the Habeas Petition, arguing Grounds I, II, and all claims in Ground III, except one, are procedurally defaulted. (Doc. 14, pp. 7-9). Respondents argue the one ineffective assistance of trial counsel sub-claim not procedurally defaulted, trial counsel's inaccurate recall of the victim's testimony in the Rule 20 acquittal argument, fails on the merits. (*Id*. at 14-17). Alternatively, Respondents argue Petitioner's sub-claim in Ground I that the trial court erred in denying a mistrial after the detective's prejudicial testimony about Petitioner's refusal to provide a DNA sample and Petitioner's sub-claim in Ground II that his consecutive sentences constitute cruel and unusual punishment also fail on the merits. (*Id*. at 8 n. 2, and 13-14).

The Magistrate Judge recommends that the District Court, after its independent review, dismiss as procedurally defaulted all claims in Grounds I, II, and III except for three sub-claims. The three remaining sub-claims should be denied on the merits and they include: (1) the sub-claim in Ground II that Petitioner's consecutive sentences violate the Eighth Amendment; (2) Petitioner's sub-claim in Ground III that his trial counsel was ineffective when confusing the victim's testimony while arguing for a Rule 20 acquittal; and (3) Petitioner sub-claim in Ground III that his trial counsel failed to ask for a jury instruction on the unlawful flight charge.

## II.      ANALYSIS

**A.    Exhaustion**

A state prisoner must normally exhaust available state remedies before a federal district court can grant a writ of habeas corpus. 28 U.S.C. § 2254(b)(1); *Duckworth v. Serrano,* 454 U.S. 1, 3 (1981). To exhaust, a claim must be fairly presented in the proper forum. In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing those claims through the state's direct appeal process or through appropriate post-conviction relief. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir.1994). This requirement of exhaustion is designed to give the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Picard v. Connor*, 404 U.S. 270, 275 (1971).

A claim is fairly presented if the petitioner describes both the operative facts and the federal legal theory upon which the claim is based. *Kelly v. Small,* 315 F.3d 1063, 1066 (9th Cir.2003), *overruled on other grounds*, *Robbins v. Carey,* 481 F.3d 1143 (9th Cir.2007). The petitioner must have "characterized the claims he raised in state proceedings *specifically* as federal claims." *Lyons v. Crawford,* 232 F.3d 666, 670 (9th Cir.2000) (emphasis in original), *as modified,* 247 F.3d 904 (9th Cir.2001). "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir.1996). "Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Hivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir.1999) (citing *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996)).

*Ground I – Trial Court's Denial of Motions for Mistrial*

In Ground I, Petitioner argues his Fifth, Sixth and Fourteenth Amendment rights were violated when the trial judge denied motions for mistrial based on prejudicial testimony elicited from the victim and a detective in the case. Petitioner alleges the trial judge erred in denying the motions for mistrial when (1) the victim testified about

Petitioner's character and (2) a detective testified that Petitioner refused to submit a DNA sample. Neither of these sub-claims is cognizable on federal habeas review because Petitioner did not present these claims to the state courts as federal claims. In his direct appeal, Petitioner raised these issues under state evidentiary law. (Doc. 14-1, pp. 24-28).

Citing Rules 404 and 403 of the Arizona Rules of Evidence, Petitioner argued the testimony from the victim and the detective unfairly prejudiced the jury against him. Petitioner did not cite any federal cases nor did he alert the state courts to any federal constitutional issue. Petitioner's single broad reference to "his right to a fundamentally fair trial" in each claim was insufficient to alert the state courts that he was asserting a claim under the United States Constitution. *Hiivala*, 195 F.3d at 1106 ("general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion") (internal citation omitted). In analyzing the claims, the Arizona Court of Appeals relied on state law governing mistrials and the prejudicial effect of improper testimony. (Doc. 14-1, pp. 5-8). Petitioner failed to exhaust these claims as federal claims at the state court level.

This Court's conclusion is unchanged by Petitioner's citation in his direct appeal to *State v. Bible*, 175 Ariz. 549, 858 P.2d 1152 (Ariz.1993). (Doc. 14-1 at 25). *Bible* does discuss a number of issues related to a right to fair trial. In his brief, Petitioner argued the prejudicial testimony from the victim is the "sort of evidence [that] is generally inadmissible, *State v. Bible*, 175 Ariz. 549, 858 P.2d 1152, cert. denied 511 U.S. 1046 (1993), and, in this case, deprived [Petitioner] of his right to a fundamentally fair trial." (Doc. 14-1 at 25). A petitioner's citation to a state case that analyzes a federal constitutional issue can be sufficient to exhaust the claim. *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir.2003) (en banc). A citation to a state case discussing federal constitutional issues does not unconditionally exhaust the federal claim. Ultimately, the federal court must determine whether the petitioner fairly presented the federal constitutional claim to the state courts such that the state courts had a fair opportunity to act on the claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).

The Court finds Petitioner's general citation to *Bible* is insufficient to fairly present a federal claim about his right to a fair trial. Petitioner did not expound on any potential fair trial issues raised in *Bible*. In fact, Petitioner did not pin cite to any specific legal discussion in *Bible*, a case that is approximately 100 pages long and addresses at least seven separate right to fair trial issues. *Bible*, 858 P.2d at 1166, 1169-1170, 1201-1204 (Considering whether defendant's right to fair trial was violated, the Arizona Supreme Court analyzed whether the trial court erred in refusing to change the venue, whether the defendant was prejudiced by the extensive media coverage in a smaller Arizona county, whether the atmosphere at trial coupled with the pretrial publicity prevented a fair trial, whether *voir dire* procedures were fundamental error, whether the trial judge's statements during trial caused prejudice, whether there was fundamental error when certain clothing was admitted as evidence and whether there was prosecutorial misconduct for a variety of reasons.). In citing *Bible*, Petitioner did not discuss any of these specific right to fair trial issues. Petitioner's claim focused, instead, on whether the trial court's evidentiary ruling, based on state law, was error. Petitioner failed to alert the Arizona Court of Appeals to a specific claim that his right to a fair trial was denied.

Likewise, Petitioner failed to federalize his claim about the detective's testimony. In his direct appeal, Petitioner argued that the trial judge's denial of his motion for mistrial was error after the detective testified that Petitioner refused to submit a DNA sample. Analyzing it as a state evidentiary issue, the Arizona Court of Appeals agreed that the detective should not have testified about Petitioner's refusal but found the error was harmless. Federal constitutional law was not implicated.

Petitioner's citation to *State v. Wilson*, 914 P.2d 1346 (Ariz.App.Div.1,1995) does not change this Court's conclusion. (Doc. 14-1, Ex. B, p. 27). *Wilson* was cited for the contention that Petitioner's invocation of his right to refuse a search should not have been used against him in trial. In *Wilson*, the Arizona Court of Appeals held a defendant's exercise of his Fourth Amendment right to refuse a search cannot be evidence, by itself, that a defendant was uncooperative. 914 P.2d at 1351. In its discussion, the *Wilson* court

cited a Ninth Circuit decision, *United States v. Prescott*, 581 F.2d 1343, 1351 (9th Cir.1978), which held that it is generally inadmissible to use a defendant's invocation of his Fourth Amendment rights as evidence of criminal wrongdoing. In *Prescott*, the Ninth Circuit analyzed the evidentiary value of a defendant's invocation of her constitutional rights. The Court did not analyze a constitutional question. At issue was an evidentiary law question. Citing *Wilson* was insufficient to federalize this claim because any state case used to federalize a claim must explicitly analyze the same federal constitutional claim. *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir.2003) (en banc). Furthermore, *Wilson* did not refer to any "clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. 2254(d). Petitioner failed to fairly present either of his sub-claims in Ground I as federal constitutional claims in his state court appeal. These claims are not exhausted.

### Ground II – Multiple Alleged Errors by the Trial Court

In Ground II, Petitioner alleges multiple errors made by the trial court. Except for one properly exhausted federal claim, all of the alleged trial court errors in Ground II are either state law claims not cognizable in federal habeas review or they are federal claims that were not fairly presented in state court. (Doc. 7, pp. 8-10). In his state appeal, the only federal claim of trial court error raised by Petitioner was an Eighth Amendment violation for the trial court's decision to sentence Petitioner to consecutive terms for the sexual assault convictions. (Doc. 14-1, pp. 28, 31-32).

Petitioner's claim that the trial court erred in its interpretation of Arizona sentencing law is a state claim not cognizable on federal habeas review. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Petitioner's claim that the trial court erred in not dismissing the two sexual assault counts of oral-vaginal contact and digital penetration because the victim consented to these acts is a claim that is both not clearly a federal constitutional issue and also not raised on direct appeal; this claim is not cognizable and not exhausted. *Lewis*, 497 U.S. at 780; *Swoopes*, 196 F.3d at 1010; *Roettgen*, 33 F.3d at 38. Also not exhausted is

- 12 -

Petitioner's Eighth and Fourteenth Amendment claims that the trial court failed to inform Petitioner of his rights in a plea colloquy.[4]

Petitioner's claim that imposing mandatory consecutive sentences for the sexual assaults convictions arising from a series of acts committed during a single incident violates the Eighth Amendment is exhausted and will be addressed on the merits. All other claims in Ground II are either not cognizable or not exhausted.

### Ground III – Ineffective Assistance of Counsel

In Ground III of his Habeas Petition, Petitioner alleges a number of trial counsel errors in violation of his Sixth Amendment right to effective counsel. In his state court PCR Appeal, Petitioner only exhausted two of these sub-claims. Appealing to the Arizona Court of Appeals, Petitioner argued his trial counsel was ineffective for (1) inaccurately recalling the testimony of the victim resulting in Petitioner failing to win acquittal on the sexual assault charges for oral-vaginal contact and digital penetration and (2) failing to request a curative jury instruction on the unlawful flight charge. (Doc. 14-2, Ex. G, pp. 71). Petitioner's list of other alleged trial counsel errors in his Habeas Petition including but not limited to trial counsel failing to make certain objections at trial, failing to advise Petitioner of rights given up in pleading guilty, and generally failing to adequately prepare for trial are all unexhausted claims. Petitioner's claim that trial counsel was ineffective for failing to re-urge the motion to sever the unlawful flight from law enforcement charge was a claim raised to the trial court but not raised to the Arizona Court of Appeals. (Doc. 14-2, Ex. F, p. 66, Doc. 14-2, Ex. G., p. 71). In Arizona, Petitioner was required to present this claim to the Arizona Court of Appeals. Because he failed to present this claim to the appellate court in his petition for review, it is not exhausted. *See Swoopes*, 196 F.3d at 1010.

**B. Procedural Default of Unexhausted Claims**

---

[4] The Magistrate Judge notes Petitioner did not take a plea on any of the counts. At one point Petitioner did consider a plea on the felony flee charge but he did not take a plea or have a plea colloquy before trial. Petitioner was found guilty of this charge by the jury. (Doc. 14-2, p. 25).

The purpose of requiring petitioners to make their federal claims known to the state courts is to give the state courts the first opportunity to correct the alleged errors. Because the Court concludes that all of Ground I, all of Ground II, except Petitioner's Eighth Amendment consecutive sentencing claim, and all of Ground III, except the two sub-claims identified above, are unexhausted, the Court must now determine if Petitioner can go back to state court to exhaust those claims.

Under Arizona law, Petitioner cannot exhaust his claims. Direct appeal is no longer available for Petitioner's unexhausted claims. *See* 16A A.R.S. Rules Crim.Proc., Rule 31.3. A subsequent PCR petition is also unavailable. Petitioner's claims would be barred by Rule 32.4(a), which requires a petition for post-conviction relief to be filed within 90 days after entry of judgment and sentence or within 30 days after issuance of the order and mandate in the direct appeal. 16A A.R.S. Rules Crim.Proc., Rule 32.4(a). Petitioner would also be barred from filing other PCR claims by Rule 32.2(a), under which a defendant is precluded from relief based upon any ground that has been waived at trial, on appeal, or in any previous collateral proceeding. 16A A.R.S. Rules Crim.Proc., Rule 32.2(a). None of the limited exceptions permitting subsequent PCR claims apply to Petitioner's unexhausted claims. 16A A.R.S. Rules Crim.Proc., Rule 32.2(a). Petitioner failed to exhaust these claims and under Arizona procedural rules, he is now procedurally barred from doing so. "[W]here a petitioner did not properly exhaust state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the petitioner's claim is procedurally defaulted." *Smith v. Baldwin,* 510 F.3d 1127, 1139 (9th Cir.2007) (quoting *Coleman v. Thompson,* 501 U.S. 722, 735 fn. 1 (1991)).

When a petitioner has procedurally defaulted his claims, federal habeas review occurs only in limited circumstances. "A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Martinez v. Ryan,* -- U.S. --, 132 S.Ct. 1309, 1316 (2012), *referencing Coleman*, 501 U.S. at 750. "Cause" requires a showing of "some objective factor" which impeded

compliance with a procedural rule, such as "a showing that the factual or legal basis for a claim was not reasonably available to counsel" or that there was "some interference by officials." *Murray v. Carrier,* 477 U.S. 478, 488 (1986) (internal citations omitted). Prejudice requires "showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original).

In its Response to the Habeas Petition, the State argued Petitioner failed to offer any cause or prejudice or a fundamental miscarriage of justice to excuse his procedural default. In his Habeas Petition, Petitioner did not address cause for the default or prejudice from a violation of federal law. After the State filed its Response pointing out this deficiency, Petitioner did not file a reply. When a petitioner's claims are procedurally defaulted and the petitioner has not shown cause or prejudice, "the district court dismisses the petition because the petitioner has no further recourse in state court." *Franklin v. Johnson*, 290 F.3d 1223, 1231 (9th Cir.2002) (internal citations omitted). The Magistrate Judge recommends the District Court, after independent review, dismiss with prejudice all the unexhausted claims.

## C.   Merits

This Court's analysis of the merits of Petitioner's remaining claims is constrained by the applicable standard of review. A state prisoner "whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)." *Price v. Vincent,* 538 U.S. 634, 638 (2003).[5] In short, AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy,* 521 U.S. 320, 333 n. 7 (1997), and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002) (*per*

---

[5] Because Petitioner's Habeas Petition was filed after the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") effective date of April 24, 1996, its provisions apply. *See Woodford v. Garceau*, 538 U.S. 202, 205-207 (2003).

*curiam*). Under AEDPA, this Court cannot grant habeas relief unless the state court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or was (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

Under § 2254(d)(1), a federal habeas court may not issue a writ, unless the state court decision was either: (1) "*contrary to* … clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* … clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor,* 529 U.S. 362, 404-405 (2000) (O'Connor, J., concurring and delivering the opinion of the Court with respect to Part II) (emphasis in original). A state court decision will be contrary to clearly established federal law if the state court applied the wrong legal rule or applies the correct precedent but on facts indistinguishable from a Supreme Court case, reaches a different result. *Id*. at 405-406, 412. A state court decision is an unreasonable application of clearly established federal law when that decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id*. at 407-408, 412.

Under § 2254(d)(2), the federal court reviews purely factual questions that were resolved by the state court. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir.2004). "[T]he question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Id*. Subsection (d)(2) "applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, ... that the process employed by the state court is defective ... or that no finding was made by the state court at all." *Taylor v. Maddox,* 366 F.3d 992, 999 (9th Cir.2004) (internal citation omitted).

"When applying [AEDPA] standards, the federal court reviews the 'last reasoned decision' by a state court ...." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir.2004)

(internal citations omitted). The Court will consider Petitioner's claims in view of the above standards. As Petitioner does not allege the state courts erred in ruling on any factual questions, the Court will confine its analysis to § 2254(d)(1).

***Mandatory Consecutive Sentences for the Sexual Assault Convictions***

In the exhausted sub-claim in Ground II, Petitioner alleges the trial court violated his Eighth Amendment right to be free from cruel and unusual punishment by running his sentences for the sexual assault convictions consecutively. The Eighth Amendment proscribes the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. The Court reviews noncapital sentences for violations of the Eighth Amendment under a "narrow proportionality principle" that prohibits sentences that are "grossly disproportionate" to the crime. *Ewing v. California*, 538 U.S. 11, 20, 23 (2003) (internal citation omitted).[6]

For a sentence to violate the Eighth Amendment there must be a threshold showing of gross disproportionality through a comparison of "the gravity of the offense [to] the harshness of the penalty." *Id*. at 28. If gross disproportionality is shown, the court can conduct a comparative analysis "by considering the sentences the state imposes on other crimes" and the sentences other jurisdictions impose for the same crime. *Id*. at 23-24. Strict proportionality between the crime and the sentence is not required and a comparative analysis within and between jurisdictions is not mandated or appropriate absent any showing of gross disproportionality. *Id*., *see also Rummel v. Estelle*, 445 U.S. 263, 281 (1980).

The Arizona Court of Appeals decision that Petitioner's sentence did not violate the Eighth Amendment was not contrary to nor an unreasonable application of federal law. Petitioner claims that his sentence of fifty-six years is excessive and violates his Eighth and Fourteenth Amendment rights. Petitioner does not argue that the term of

---

[6] It is clearly established Supreme Court law that sentences for terms of years are subject to a gross disproportionality analysis under § 2254(d)(1). *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

fourteen years for each sexual assault conviction violates the Eighth Amendment, rather he argues the consecutive terms for the four sexual assault convictions arising from one encounter with the victim and totaling fifty-six years violate the Eighth Amendment. (Doc. 7, p. 8).

In analyzing the Eighth Amendment issue, the Arizona Court of Appeals correctly noted that "only in 'exceedingly rare' cases will a sentence to a term of years violate the Eighth Amendment's prohibition on cruel and unusual punishment." (Doc. 14-1, Ex. A, p. 10, quoting *Ewing v. California*, 538 U.S. 11, 22 (2003)). The Court of Appeals further explained a "prison sentence is not grossly disproportionate ... if it arguably furthers the State's penological goals and thus reflects 'a rational legislative judgment, entitled to deference.'" (*Id*., quoting *Ewing v. California*, 538 U.S. at 30). Finally, the Court of Appeals explained that as a general rule, the Arizona Supreme Court has held that a sentence will not be held to be disproportionate due to its consecutive nature, because the "Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence." (Doc. 14-1, Ex. A, p. 11, quoting *United States v. Aiello*, 864 F.2d 257, 265 (2d. Cir.1988)).

The Arizona Court of Appeals used the correct legal principle and did not unreasonably apply that principle in analyzing Petitioner's claim. The fourteen-year sentence for each count of sexual assault was not grossly disproportionate to Petitioner's crime. While a fifty-six year cumulative sentence may be harsh for a perpetrator who commits a series of acts as part of one incident involving one victim, it was the province of the state legislature to determine the appropriate punishment to be imposed for the criminal acts and the punishment is not grossly disproportionate to the crime. The Arizona Court of Appeals' conclusion that Petitioner's sentence is not grossly disproportionate is not contrary to federal law or an unreasonable application of federal law. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (where "the governing principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle-the precise contours of which are unclear" it is not objectively

unreasonable for a state court to conclude these contours permit affirming a sentence). The Court recommends denying this claim.

### *Exhausted Ineffective Assistance of Counsel Claims*

The Court addresses the two exhausted ineffective assistance of counsel claims in Ground III. To prevail on an ineffective assistance of counsel claim, a convicted defendant must show: (1) deficient performance by counsel; and (2) that such deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). To show deficient performance, a petitioner must demonstrate that trial counsel's performance was objectively unreasonable, i.e., "outside the wide range of professionally competent assistance." *Id*. at 688, 690. Judicial scrutiny of counsel's performance "must be highly deferential." *Id*. at 689. Counsel is "strongly presumed to have rendered adequate assistance." *Id*. at 690. Courts reviewing counsel's performance "evaluate the conduct from counsel's perspective at the time" to "eliminate the distorting effects of hindsight." *Id*. at 689. Strategic choices made by counsel after thorough investigation are "virtually unchallengeable." *Id*. at 690. To show prejudice, a petitioner must demonstrate there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Because a petitioner must prove both prongs of *Strickland*, a court need not decide one prong if the petitioner fails on the other prong. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id*. at 697.

### 1. Trial Counsel's Inaccurate Recall of Victim Testimony

Petitioner argues trial counsel was ineffective for inaccurately recalling the testimony of the victim (Doc. 14-2, Ex. E, pp. 10-13). Petitioner asserts that if trial

counsel had not confused the testimony of the victim, his motion for acquittal would have been granted on two of the sexual assault charges.

Trial counsel did inaccurately recall which type of oral sex was suggested by the victim. Trial counsel argued the sexual assault charge based on oral-penile contact should have been dismissed based on consent, when, in fact, the victim had testified that she suggested oral-vaginal contact. Without ruling that this error was deficient performance by trial counsel, the state courts found the error was not prejudicial. The state courts application and conclusion that trial counsel was not ineffective under *Strickland* was not clearly contrary to or an unreasonable application of federal law.

This Court reviews the analysis of the Arizona trial court as that was the last reasoned decision of the state courts. The trial court determined Petitioner suffered no prejudice from trial counsel's confusion of the testimony because the trial court would have denied any motion for acquittal on any of the four sexual assault charges. (Doc. 14-2, Ex. F, pp. 67-68). The trial court noted the victim testified that she did not voluntarily agree to any sexual activity with Petitioner and that she feared for her safety. (*Id.*). The trial court found the victim's suggestion of oral-vaginal contact because "the non-consensual penile-vaginal sex was making her sore" was not the equivalent of consensual sex and the accompanying digital penetration was also not consensual such that acquittal "based on a consent theory would have been inappropriate." (*Id.*). The Court of Appeals found no abuse of discretion on the part of the trial court. (Doc. 14-2, Ex. H, p. 97).

This Court finds the Arizona courts' application of the *Strickland* standard and its conclusion that Petitioner's trial counsel was not ineffective is not contrary to or an unreasonable application of the clearly established federal law. Significant testimony from the victim supported the trial court's decision to deny a motion for acquittal on any of the sexual assault counts. The victim testified that she did not consent to any of the sexual activity with Petitioner and that she feared for her safety. There is no reasonable probability that but for trial counsel's confusion about the victim's testimony Petitioner would have won acquittal on the two sexual assault charges at issue. This Court

recommends denying Petitioner's claim.

### 2. Trial Counsel's Alleged Error on the Unlawful Flight Charge

Petitioner claims trial counsel was ineffective for failing to request a curative jury instruction on the unlawful flight charge. (Doc. 14-2, Ex. E, pp. 10-13; Doc. 14-2, Ex. G, p. 71). Petitioner contended there was no connection between the unlawful flight charge and the sexual assault charges. He stated evidence of the unlawful flight was prejudicial because Petitioner appeared to be fleeing from charges of the sexual assault. Petitioner argued without a limiting instruction, the jury would believe he was fleeing from police because of the sexual assault, when, in fact, Petitioner claimed he was fleeing because of other charges deriving from an incident in Maricopa County.

Analyzing these claims, the trial court found there was no attorney error and Petitioner was not prejudiced. (Doc. 14-2, Ex. F, pp. 69-70). At trial the victim was permitted to testify about statements Petitioner made to her during the assault, which included him telling her that he was going to be sent away to prison for charges pending in Maricopa County. These statements made by Petitioner were permitted as evidence because they completed the story of the crime and the statements suggested a possible motive for the sexual assault. (Doc. 14-2, Ex. F., p. 69). The trial court reasoned because the flight evidence was cross-relevant to the sexual assault charges, a limiting instruction would not have been given. (*Id.* at 70). The Court of Appeals found no abuse of discretion by the trial court. (Doc. 14-2, Ex. H, p. 97).

This Court finds the state courts application of *Strickland* was not contrary to federal law and the courts did not unreasonably apply *Strickland* to Petitioner's claims. The record shows substantial evidence connecting the unlawful flight charge to the sexual assault. Petitioner made statements to the victim about the pending charges in Maricopa County and this evidence was relevant and permitted during trial. A limiting jury instruction was not necessary as the trial court had determined the testimony on unlawful flight was relevant to the sexual assault charges and therefore, would not have given a limiting instruction. The Court recommends denying this sub-claim.

III.   **RECOMMENDATION**

Based on the foregoing, the Magistrate Judge recommends that the District Judge, after independent review, enter an order DISMISSING with prejudice all of Grounds I, II, and III, except sub-claim in Ground II challenging under the Eighth Amendment, the trial court's imposition of mandatory consecutive sentences for the sexual assault convictions and the two exhausted sub-claims in Ground III alleging ineffective assistance of counsel. The Magistrate Judge recommends that the sub-claim in Ground II challenging the consecutive sentences and the two exhausted sub-claims in Ground III alleging ineffective counsel be denied on the merits.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within fourteen (14) days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: cv-09-320-TUC-JGZ.

Dated this 8th day of August, 2012.

_____

**CHARLES R. PYLE**
**UNITED STATES MAGISTRATE JUDGE**

- 22 -